McNeill v. McNeill.

[87 South. 645.   No. 21682.]

1. DIVORCE. *Acts of cruelty need not be malicious to constitute ground parties in pari delicto.*

In an action for divorce based upon the ground of habitually cruel and inhuman treatment, it is not necessary that the acts of alleged cruelty shall be malicious; such acts are to be judged by the effect produced, and the motives prompting them are immaterial.

2. DIVORCE. *Sufficient if acts of cruelty create reasonable apprehension of danger to life or health.*

In an action for divorce based upon habitually cruel and inhuman treatment, in order that the complaining party may be entitled to relief, it is not necessary that the acts of alleged cruelty shall be, in fact, menacing to the life or health of complainant; but, if the alleged acts of cruelty are such as to create in the mind of the complainant a reasonable apprehension of such danger, relief should be granted.

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Suit by Nannie W. McNeill against Henry W. McNeill, with cross-bill by defendant. Relief was denied to both parties, and complainant appeals. Reversed and remanded.

*W. E. Morse,* for appellant.

The court erred in ruling that in cruel and inhuman treatment there must be shown malice. This is apparent from the ruling of the supreme court in other cases. Malice is an element of criminal law but is not necessary to constitute cruel and inhuman treatment.

Our court has held to the theory and the majority of courts hold that way that it is the protection of the party from injury and not the punishment of malice which authorizes a decree for cruel and inhuman treatment. There seems to be about six states which hold that malice must be shown, but their statute is slightly different from ours and their ground is cruel and barbarous treatment.

Mr. McNeill may have acted without malice; we do not concede that he did, when he went in Mrs. McNeill's room and made the threat catching her by the arm and drawing his knife and stating that "we will both die together," I say that he may have acted without malice, but Mrs. McNeill could not tell, and she was so badly frightened that she jerked away and ran into another room. If he was simply acting a part he certainly fooled both Mrs. McNeill and his son who stated that "he looked like he was going to kill her." 73 Am. Dec. 624, Note:

"Motive in inflicting cruelty immaterial. The test by which acts of alleged cruelty are to be judged being whether or not they were dangerous to life, limb, or health or created a reasonable apprehension of such danger, the motive which incites the commission of the acts is immaterial. They may have been the promptings of an unloving and malignant heart, the impulses of a debased and

brutal nature; or they may have been occasioned by a mad jealousy which sprung from an excessive love and devotion. In speaking of misconduct arising from jealousy, the court in *Kirham* v. *Kirham*, 1 Hag. Con. 409, 4 Eng. Ecc. 438, says that jealousy is a passion producing effects as violent as any other passion, and there will be the same necessity to provide for the safety and comfort of the individual. If that safety is endangered by violent and disorderly affections of the mind, it is the same in its effects as if it proceeded from mere malignity alone." So in *Westmeath* v. *Westmeath*, 4 Hag. Ecc. Supp. 1, 4 Eng. Ecc. 238, 271, it is said: "It is not necessary to inquire from what motive such treatment proceeds. It may be from turbulent passion, or sometimes from causes not inconsistent with affection. If bitter waters are flowing, it is not necessary to inquire from what source they spring. If the passions of the husband are so much out of his control as that it is inconsistent with the personal safety of the wife to continue in his society, it is immaterial from what provocations such violence originated." The same is the law of Holden, 1 Hag. Con. 453; 4 Eng. Ecc. 452.

Divorce is granted for protection, not as punishment. Courts interfere to grant divorces for cruelty, not so much as a punishment for an offense already committed as to relieve the complainant from an apprehended danger; punishment for past misconduct may enter into the judgment, but the divorce is granted mainly as a protection against future probable acts of cruelty; this probability being based upon the former conduct, and the character and disposition of the parties. The proceeding is in effect *quia timet*. It is for safety in the future, not retribution in the past. Bishop on Mar. & Div., sec. 719; *English* v. *English*, 27 N. J. Eq. 579, 585; *Cook* v. *Cook*, 11 Id. 195. All these cases recognize this principle.

Our law is taken largely from the English common law and our equity from the ecclesiastical law of England, and it is their interpretation that reasonable apprehension of bodily harm is an element of cruel and inhuman treatment

and is sufficient to entitle a person to a divorce if they can come within that rule. Our own court has adopted this rule and announced it in the case of *Kinley* v. *Kinley,* 2 Howard 751, which decision has been reaffirmed by this court. *Humble* v. *Humble,* 68 So. 161; *May* v. *May,* 62 Pa. (12 P. F. Smith) 206, 210; *Waldron* v. *Waldron,* 24 Pac. 649, 650, 85 Cal. 251; 9 L. R. A. 487; *Morris* v. *Morris,* 14 Cal. 76, 77, 73 Am. Dec. 615; *Butler* v. *Butler* (Pa.), 1 Pars. Eq. Cas. 324, 344; *Richards* v. *Richards* (Pa.), 1 Grant. Cas. 389, 391; *Gordon* v. *Gordon,* 48 Pa. (12 Wright) 226, 238; *Uhlmann* v. *Uhlmann* (N. Y.), 12 Abb. N. C. 236, 237; *Perry* v. *Perry* (N. Y.), 2 Paige, 500; *Mason* v. *Mason* (N. Y.), 1 Edw. Ch. 278, 291; *Kennedy* v. *Kennedy,* 73 N. Y. 369, 373; *Cole* v. *Cole,* 23 Iowa, 433, 438; *Wheeler* v. *Wheeler,* 5 N. W. 689, 692, 53 Iowa, 511, 36 Am. Rep. 206; *Williams* v. *Williams,* 2 So. 768, 769, 23 Fla. 324; *Holyoke* v. *Holyoke,* 6 Atl. 827, 828, 78 Me. 404; *Odom* v. *Odom,* 36 Ga. 286, 317; *Holt* v. *Holt,* 117 Mass. 202, 204; *Bailey* v. *Bailey,* 97 Mass. 373, 380, 381; *Ratts* v. *Ratts,* 11, 111 App. (11 Bradw.) 366; *Gibbs* v. *Gibbs,* 18 Kan. 419, 423; *Tayman* v. *Tayman,* 2 Md. Ch. 393, 399; *Daiger* v. *Daiger,* Id. 335, 340; *Hawkins* v. *Hawkins,* 3 Atl. 749, 750, 65 Md. 104; *Hughes* v. *Hughes,* 19 Ala. 307, 309; *Thornberry* v. *Thornberry,* 25 Ky. (2 J. J. Marsh) 222, 323; *Cline* v. *Cline,* 10 Or. 474, 475. And the courts adjudged such a state of things as sufficient cause for a decree of separation on the ground that, in a state of personal danger, no duties to another can be perfectly performed for the reason that under such circumstances the duty of self-preservation, which is primary in its commencement and paramount in obligation, is superior to the duties imposed by the marital connection, and when called into action, is inconsistent with those duties and renders their discharge impossible. *Rose* v. *Rose,* 9 Ark. (4 Eng.) 507, 513. And such acts will constitute cruel and abusive treatment, within the meaning of a statute authorizing a divorce for such cruelty. *Lyster* v. *Lyster,* 111 Mass. 327, 329. And see, also, *Williams*

v. *Williams,* 28 Pac. 726, 728, 1 Colo. App. 281; *Sharman*
v. *Sharman,* 18 Tex. 521, 525.

*M. Ney Williams,* for appellee.

The act of violence complained of admittedly not with
malice, but a pretended threat purposedly to restrain com-
plainant from abandoning defendant is not sufficient in
law for a divorce, and especially when the abandonment
was the provocation for the pretended threat.

Cruel and inhuman treatment must be habitual, malic-
ious and menacing to life or health. The testimony in
this record does not indicate a situation of that kind. The
act of violence testified to by appellant was partially
corroborated by her son, Lloyd McNeill, but wholly denied
by appellee. In applying the law the learned chancellor
took the evidence of the acts of violence, of all three of
the parties in the room, and after consideration, found in
favor of the appellee. The appellant contends that the
alleged act of violence constituted habitual, cruel and in-
human treatment on the part of appellee, and that under
the proof and of the law, that the lower court erred in
dismissing her bill and denying her a divorce, and in her
contention counsel for appellant chiefly rely upon the well
known case of *Humber* v. *Humber,* 68 So. Rep. 161.

Quoting from the Humber case the court said: "Mar-
riage is a most solemn contract, provided for by the laws
of the state and sanctified by the ceremonies of the church.
The dissolution of its bonds is no light matter. The best
sentiment of society is opposed to divorce. The law au-
thorizing divorces for certain causes requires a strict com-
pliance with its provisions."

It is contended here by the appellant that the act of
violence of Mr. McNeill caused appellant to have a fear
of losing her life or suffering bodily harm at his hand,
and that there was danger of her health being impaired
by said acts. The original bill of appellant in this cause
charges that appellant apprehended that her husband

would do her some injury and that it was not safe for them to live together. The evidence of appellant and her son Lloyd McNeill was heard on this, and the chancellor held that the evidence was insufficient to sustain the case.

A single act of cruelty does not ordinarily constitute ground for divorce, although a fixed or persistent habit of cruelty need not appear. See 14. Cyc., p. 601. Ordinarily intention, willfulness, or malice is a necessary element of the cruel treatment which the law recognizes as a ground for divorce. (See 14 Cyc., p. 601.)

The testimony of Mrs. McNeill, the appellant, shows that the threat made against her by appellee on said night did not cause her to have any fear of losing her life, or of suffering impaired health, and caused her to have no belief that she and Mr. McNeill could not longer safely live together and cohabit as man and wife. The very next morning after the threat of the night before we find Mrs. McNiell in Mr. McNiell's room cleaning it up and carrying on her household duties as if nothing had happened. Page 67 of the Record of Mrs. McNeill's testimony shows the following: "The night that he came in and threatened my life with the knife, he went on out, and the next morning when I was cleaning up his room I found the knife, and I says to myself, 'Well, he will never threaten we with this knife again.' And I took it and locked it up."

We respectfully submit that the learned chancellor was correct in dismissing the bill in the court below and denying the relief prayed for, as the proof in this case does not support the allegation in the pleadings of the appellant. This case should be affirmed at the cost of appellant.

W. H. Cook, J., delivered the opinion of the court.

Mrs. Nannie W. McNeill, appellant, filed her bill in the chancery court of the Second district of Hinds county seeking a divorce from her husband on the ground of habitually cruel and inhuman treatment, and praying for

temporary and permanent alimony. The husband, H. W. McNeill, filed his answer to the bill, denying the allegations thereof, and made his answer a cross-bill in which he sought a divorce on the ground of desertion for the statutory period, and upon the final hearing a decree denying a divorce to both parties was entered, and from this decree Mrs. McNeill prosecuted this appeal.

The conclusion which we have reached in this case makes it unnecessary to state the facts, and we decline to express any opinion as to the facts or the merits of the unfortunate disagreement between these parties; but we are of the opinion that, in passing upon the facts before him, the chancellor has applied an erroneous rule of law.

The final decree as entered recites that the court doth find as follows:

"That the complainant, Mrs. Nannie W. McNeill, is not entitled to the relief prayed for because of the act of violence, or one of the acts complained of, was made without malice; that the threat made by Henry McNeill was a pretended threat the purpose of which was to restrain the complainant from abandoning defendant, and that a threat is not sufficient in law for a divorce, especially where the abandonment was the provocation of the threat.

"The court doth further find that to warrant a divorce upon the grounds of cruel and inhuman treatment, that the cruel and inhuman treatment complained of must be habitual, malicious, and menacing to life or health. The testimony in this record does not indicate a situation of that kind."

The announcement that to warrant a divorce on the ground of cruel and inhuman treatment, the cruel and inhuman treatment must be habitual, malicious, and menacing to life or health, is erroneous in two respects. It is difficult to formulate an accurate definition of "cruel and inhuman treatment," as used in our statutes on divorce, which will cover all cases, and while the courts must adjudicate each case upon its own facts, the acts of alleged cruelty are to be judged by the effect produced and not by

the motive prompting the act. A malicious motive is not the test, and if the cruel and inhuman effect is produced by the acts and conduct complained of, it is immaterial whether such acts spring from the promptings of a malicious heart or from other motives.

The pronouncement that the cruel and inhuman treatment must also be menacing to life or health is also erroneous. It makes the right to relief depend upon the actual existence of danger to life or health and excludes a reasonable apprehension of such danger. In order that the complaining party may be entitled to relief, it is not necessary that danger to life or health shall in fact exist; but if the acts of cruelty are such as to create in the mind of the complainant· a reasonable apprehension· of such danger, relief should be granted.

In holding that to warrant a divorce on the ground of cruel and inhuman treatment the complaining party must show acts of cruelty which were malicious and actually menacing to life or health, the learned chancellor had applied to the facts in this case an erroneous test and one that is entirely too severe, and for this error this cause is reversed and remanded.

*Reversed and remanded.*