IRVING, J.,
for the Court.
¶ 1. James and Stephanie White, now Stephanie White Brown, were divorced in March 1998. Brown received both legal and physical custody of the couple’s minor daughter. In July 2002, White filed a complaint to modify former judgment and a motion for emergency temporary custody. Shortly thereafter, the chancellor entered an order granting White emergency temporary physical custody. After a hearing on the mattér, the chancellor entered a judgment of modification awarding physical custody of the child to White. Aggrieved by the chancellor’s decision, Brown appeals and assigns the following issues as error: (1) the lower court erred in finding a material change in circumstances that was adverse to the child and sufficient to warrant a change of custody, and (2) the lower court erred in its application and analysis of the Albright factors. Finding no error, we affirm the chancellor’s ruling on all issues.
FACTS
¶ 2. Stephanie White Brown and James Fredrick White, II were divorced in March 1998, and pursuant to a written agreement, both parties agreed that Brown would have legal and physical custody of the parties’ seven-year-old daughter, Katel-ynn. After the parties’ divorce, Brown moved numerous times and Katelynn attended several different schools due to the moves. Within four years, Katelynn had lived at ten different residences in five different states. Testimony showed that while in kindergarten, the child had attended two different schools in two states, and in first grade had attended three different schools in two states. As a result, at the time of the hearing, Katelynn was repeating her first grade year.
¶ 3. Testimony also showed that, after the parties’ divorce, Brown and Katelynn *1118 lived with a man whom Brown later married and subsequently divorced. At the time of the child custody hearing, Brown was dating a new man. At the conclusion of the testimony, the chancellor determined that the judgment of divorce should be modified, and custody of Katelynn be awarded to her father. Additional facts will be related during our discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

Standard of Review

¶ 4. “The standard of review in child custody cases is quite limited.” Johnson v. Gray, 859 So.2d 1006, 1012(¶ 31) (Miss.2003). “A chancellor must be manifestly wrong, clearly erroneous, or apply an erroneous legal standard in order for [an appellate court] to reverse.” Id. “Findings of fact made by a chancellor may not be set aside or disturbed [on] appeal if they are supported by substantial, credible evidence.” Id.

Material Change in Circumstances and Application of the Albright Factors

¶ 5. Brown first argues that the trial court committed reversible error in finding a material change in circumstances that adversely affected Katelynn’s welfare, and that was sufficient enough to warrant a change of custody. She next contends that the lower court erred in its application and analysis of the Albright factors. For the sake of brevity and clarity, these issues will be treated as one.
¶ 6. The law is well-settled that “a modification of custody is warranted [if] the moving parent successfully shows ... a material change in circumstances which has an adverse effect on the child, and modification of custody would be in the child’s best interest.” Johnson, 859 So.2d at 1013(¶ 33). Specifically, “a non-custodial party must prove [that] (1) there has been a substantial change in circumstances affecting the child, (2) the change adversely affects the [child’s] welfare, and (3) a change in custody is in the best interest of the child.” Id.
¶ 7. Brown properly advances that in determining the best interest of the child, a chancellor should weigh factors such as the child’s age, sex, health, preference, home, and school and community records. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The chancellor should also determine which parent has had continuity of care of the child prior to separation, which parent has the best parenting skills, and which parent has the willingness and capacity to provide primary child care. Id. Additionally, each parent’s employment and responsibilities of that employment, physical and mental health, age, moral fitness, and emotional ties between parent and child should also be evaluated. Id. Finally, the stability of the home environment,' and other factors relevant to the parent-child relationship should be considered. Id.
¶ 8. Brown relies heavily on Brown v. Brown, 764 So.2d 502 (Miss.Ct.App.2000) to support her proposition. In Brown, a father sought physical custody of his two minor sons. The father alleged that the children’s mother had changed residences six times in six years, had failed to pay her utility bills, had lived with three different men in the same house as the children, had used profanity in the children’s presence, and had required the children to awaken at 5:30 a.m. in order to get ready for school. Id. The chancellor found that these allegations did not constitute a material change in circumstances sufficient to warrant a change of custody. Id. This Court affirmed the chancellor’s decision and found that he did not abuse his discretion. Id.
*1119 ¶ 9. We note that “[i]n custody battles, the best interest of the child remains paramount and the central focus for a chancellor should always be on how a given situation may adversely impact upon the child.” Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993). Nevertheless, “our limited scope of review directs that ‘[w]e will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child.’ ” Id. citing Yates v. Yates, 284 So.2d 46, 47 (Miss.1973.) Here, the chancellor determined that there had been a material change in circumstances that adversely affected Katelynn’s well-being based on the following findings: Katel-ynn had moved at least ten times in the four years since her parents had separated; she had failed first grade and was doing poorly academically; the child was exposed to pornographic tapes while in the custody of her mother; and Brown’s new job schedule caused problems with Katel-ynn’s care. The chancellor also found that Brown’s relationships with different men was not healthy for Katelynn.
¶ 10. As in Brown, we give deference to the chancellor’s decision. Considering our limited scope of review and the chancellor’s specific findings that are supported by the record, we cannot say that she committed manifest error in modifying child custody in favor of White. White met the requisite burden of proof in proving that a material change in circumstance had occurred. White also presented an abundance of evidence to show that Brown’s frequent moves, the child’s exposure to pornographic tapes, Brown’s job schedule, and her personal relationships, with different men were all detrimental to Katelynn. The chancellor noted that the child had a self-esteem issue and needed stability to focus on herself. As a result, the chancellor determined that a change of custody was in Katelynn’s best interest, and that her father would provide her with a more stable home environment.
¶ 11. After determining that there had been a material change in circumstances which adversely affected Katelynn, the court analyzed the Albright factors to determine who would receive physical custody of the child. The chancellor found that factors such as Katelynn’s age, each parent’s parenting skills, the parties’ physical and mental health, and each parent’s age and financial stability were all neutral and did not weigh in favor of either Brown or White. The chancellor also determined that Katelynn’s sex, and her continuity of care up until she was sent to live with her maternal grandmother to attend school weighed in favor of Brown.
¶ 12. The chancellor, however, found that factors such as the parents’ employment, the child’s school and community record, and stability of the home environment weighed in favor of White. The chancellor specifically found that the employment factor weighed in favor of White because Brown’s new job caused problems with her work hours, and would require her to have possibly two babysitters for Katelynn. In addition, the chancellor found that Katelynn’s school and community record weighed in favor of her father because the child’s moving from school district to school district had an effect on her schooling. The chancellor also reasoned that the stability of the home environment factor weighed in favor of White because Brown’s change in partners on a regular basis had a negative impact on Katelynn. After weighing and considering each Albright factor, the chancellor found that overall the factors weighed in favor of the child’s father.
¶ 13. We find that the chancellor did not commit manifest error in awarding primary custody of the child to her father. *1120 There was sufficient evidence to show that a material change had occurred, the change was detrimental, and that modification was in the best interest of the child. Therefore, the chancellor’s decision is affirmed.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ„ CONCUR.